[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 17, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-12063
Non-Argument Calendar

_____

BIA Nos.
A78-611-706 & A78-611-707

JORGE ENRIQUE AREVALO RODRIGUEZ,
LIDA VALENCIA PADILLA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(January 17, 2007)**

Before ANDERSON, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Jorge Enrique Arevalo Rodriguez and his spouse, Lida Valencia Padilla, petition this Court for review of the Board of Immigration Appeals' (BIA's) final order affirming the immigration judge's (IJ's) denial of their application for asylum and withholding of removal under the Immigration and Nationality Act (INA) and relief under the United Nations Convention Against Torture (CAT).[1] We deny the petition.

## I. STANDARD OF REVIEW

When the BIA issues a decision, we review only that decision, except to the extent the BIA expressly adopts the IJ's decision. *See Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). In this case, the BIA both expressly adopted the IJ's decision and made some of its own observations, and, therefore, we review both decisions.

To the extent the BIA's decision was based on a legal determination, review is *de novo*. *Mohammed v. Ashcroft*, 261 F.3d 1244, 1247-48 (11th Cir. 2001). The BIA's factual determinations are reviewed under the substantial evidence test, and we "must affirm the BIA's decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Al Najjar*, 257 F.3d

---

[1] The Petitioners do not raise any arguments in their brief regarding the IJ's denial of asylum and CAT relief. Therefore, they have abandoned those issues on appeal. *See Sepulveda v. U. S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005). Accordingly, we only address Arevalo's claim for withholding of removal.

at 1283-84 (citation omitted). The substantial-evidence test is "deferential" and does not allow "re-weigh[ing] the evidence from scratch." *Mazariegos v. Office of U.S. Att'y Gen.*, 241 F.3d 1320, 1323 (11th Cir. 2001) (quotation omitted). To reverse the BIA's decision, we must conclude that the record not only supports such a conclusion, but compels it. *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004).

## II. DISCUSSION

Arevalo, the lead petitioner, contends he was singled out by the National Liberation Army (ELN) because of his participation in health brigades, refusal to provide the ELN with medicine, and filing a complaint that called for an investigation into missing medicine. Arevalo also asserts it is more likely than not he will be persecuted for his imputed political opinion because the ELN knows he participated in health brigades where democratic ideology was advocated.

In a withholding of removal claim, an alien shall not be removed to a country if his "life or freedom would be threatened in that country because of his race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3). The alien has the burden of proof to establish he would face persecution on account of one of the five protected grounds if returned to the proposed country of removal. *Antipova v. U.S. Att'y Gen.*, 392 F.3d 1259, 1264 (11th Cir. 2004). To establish eligibility, the applicant must show he suffered

3

past persecution or have a well-founded fear of future persecution on account of one of the protected grounds. 8 C.F.R. § 208.16(b)(1), (2).

A. *Past Persecution*

Arevalo has failed to show he was a victim of past persecution based on a protected ground. The record indicates that, on four different occasions in 1996, two men and a woman approached him during health brigades and demanded that he give them medicine. These people never confronted Arevalo about his political opinions, his affiliation with the Liberal Party, or his participation in the health brigades. Although Arevalo contends he was targeted because he participated in the health brigades, this argument is unavailing because there is no indication that the three people confronted his colleagues during the four encounters.

Arevalo also contends he was targeted because he filed a complaint, which triggered an investigation into the missing medicine. Arevalo claimed he received threatening phone calls, was threatened at gunpoint, and even shot by ELN members who demanded that he withdraw his complaint and give them medicine. Arevalo's argument is unavailing because the ELN was retaliating against him for implicating them in a crime, not persecuting him based on a protected ground. Thus, even assuming the ELN's conduct toward Arevalo amounts to persecution, Arevalo has failed to show it was on account of a protected ground.

4

B. *Future Persecution*

Where the alien has not suffered past persecution, he bears the burden of establishing that it is more likely than not he would suffer persecution upon removal. *Antipova*, 392 F.3d at 1264. To show a well-founded fear of future persecution, there must be a causal connection between the feared persecution and the protected ground. *Sepulveda*, 401 F.3d at 1231.

As Arevalo has not established past persecution based on a protected ground, he must show it is more likely than not he will suffer persecution upon removal. At his removal hearing, Arevalo submitted reports stating medical personnel, and more specifically, health brigade workers, were at risk from armed groups. The details of Arevalo's encounters with alleged ELN members, however, do not indicate that he was at risk simply because he was a member of a health brigade. As noted above, Arevalo was threatened because he would not provide the ELN with medicine, and Arevalo never indicated that, prior to his leaving the country, the ELN ever threatened him or his colleagues simply because they were participating in the health brigades.

Arevalo also testified several of his health brigade colleagues were either missing, murdered, or forced to leave the country. He submitted a letter from a friend, written in 2004, informing him that a colleague from his health brigade had been killed by the ELN. Arevalo also submitted a letter from another friend,

5

written in 2000, stating the ELN was threatening others who shared Arevalo's ideals. The IJ, however, found this evidence did not "in and of itself" indicate that the persons responsible were ELN members. As the IJ noted, Colombians face danger due to civil strife and anarchy, and this is not, in and of itself, persecution. While the record may support a conclusion that Arevalo will be targeted because he participated in health brigades, it does not compel it.

The letters also indicate that, after Arevalo left the country, the ELN began targeting him because his "ideals" were in conflict with their political principles. Arevalo's testimony indicates that, prior to leaving the country, the ELN did not target him because of his "ideals," but rather they targeted him solely because they wanted medicine and they wanted him to withdraw his complaint. While this evidence may support Arevalo's contention that he will be persecuted because of his political opinion if he returns to Colombia, it does not compel such a conclusion.

### III. CONCLUSION

Substantial evidence supports the BIA's and IJ's denial of withholding of removal. The record does not compel an opposite conclusion.[2]

PETITION DENIED.

---

[2] Arevalo also contends both the IJ and BIA failed to adequately address whether relocation within Colombia could have been successful and reasonable. Arevalo's inability to demonstrate it is more likely than not that he was or will be persecuted on account of any protected ground is fatal to his withholding of removal claim. Therefore, even if the IJ failed to properly analyze the relocation factors, the error was harmless.